**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
**Scott D. Eads**, OSB #910400
Email: seads@schwabe.com
**Jason A. Wrubleski**, OSB #120524
Email: jwrubleski@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

*Attorneys for Plaintiff,*
*Edwards Vacuum LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON (PORTLAND DIVISION)

| | |
|---|---|
| **EDWARDS VACUUM LLC**, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>**HOFFMAN INSTRUMENTATION SUPPLY, INC.**, d/b/a **HIS INNOVATIONS GROUP**, an Oregon corporation; **MARK ROMEO**, an individual; **JEFFREY SCHWAB**, an individual; **JOSHUA RATCHFORD**, an individual; **COLLIN MUNDUS**, an individual; **ELISHA LEVETON**, an individual; **RICHARD DATE**, an individual; **JONATHAN DIRKSEN**, an individual; **JOHN CHADBOURNE**, an individual; **ANDREW ENSELEIT**, an individual; **TRAVIS HOVDE**, an individual; **CHAD COOK**, an individual; **TOBY DOUGLAS STANLEY**, an individual; **PAUL ANDERSON**, an individual; and DOES 1-20,<br><br>Defendants. | Case No. 3:20-cv-1681<br><br>**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS, CONVERSION, BREACH OF DUTY OF LOYALTY, CIVIL CONSPIRACY AND UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 -    COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR. 97204
Telephone: 503-222-9981
Fax:503-796-2900

Plaintiff Edwards Vacuum LLC ("Edwards"), by its undersigned counsel, for its complaint against Hoffman Instrumentation Supply, Inc, d/b/a HIS Innovations Group ("HIS"), and former Edwards employees recruited by HIS, including Mark Romeo ("Romeo"), Jeffrey Schwab ("Schwab"), Joshua Ratchford ("Ratchford"), Collin Mundus ("Mundus"), Elisha Leveton ("Leveton"), Richard Date ("Date"), John Chadbourne ("Chadbourne"), Andrew Enseleit ("Enseleit"), Travis Hovde ("Hovde"), Jonathan Dirksen ("Dirksen"), Chad Cook ("Cook"), Toby Douglas Stanley ("Stanley"), Paul Anderson ("Anderson"), and Does 1-20 (collectively, "Defendants"), hereby alleges as follows:

## BACKGROUND AND NATURE OF THE CASE

1.      This case involves Defendants' willful misappropriation of Edwards's sensitive, confidential, and proprietary business and technical information—in particular, Edwards's trade secrets and other sensitive information relating to its proprietary integrated systems for vacuum pump arrays used in semiconductor chip manufacturing.

2.      Plaintiff Edwards is an industry leader in vacuum pump technology.  Among other applications, it designs, manufactures, and sells highly specialized pumps used in the field of semiconductor manufacturing.  Those pumps are used to evacuate air and other gases from vacuum chambers where semiconductor manufacturing processes take place.  As discussed further below, the requirements for semiconductor manufacturing are stringent, and the pumps must tie into multiple complex systems within a manufacturing facility that may employ thousands of these specialized pumps to support the vacuum manufacturing processes.  The pumps, each suited to the unique and exacting requirements of the specific manufacturing processes they support, cost up to $40,000 per unit.

3.      Starting more than two decades ago, Edwards began to develop an integrated vacuum pump system to support a key customer with semiconductor manufacturing facilities in Hillsboro, Oregon.  An integrated system advantageously was able to combine an array of vacuum pumps into a single chassis with discrete connections to the various systems, with the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

vacuum pumps and supporting components "stacked" to optimize economically the equipment's "footprint" in valuable facility space.  For example, such a system could provide minimal points of connection to and from the semiconductor fabrication tool, as well as numerous other facility systems like nitrogen, process chilled water, electricity, and exhaust piping, distributing those utilities to all vacuum pumps in a single chassis.  The system also had a central computerized control system to monitor and control the integrated system and each of the discrete vacuum pumps.  That computer could then tie into the various monitoring and safety systems within the manufacturing facility.  An integrated system, combining all vacuum pumps that support a particular manufacturing process, could thus dramatically reduce the footprint of the equipment and provide numerous efficiencies in installation and operational costs.

4.     Over the past 30 years, Edwards has invested approximately $100 million dollars and over one hundred thousand person-hours designing, developing, and improving upon these systems, which are now sold under brand names Synergis and eZenith.  Throughout much of that development period, the lead architect of Edwards's systems was its former Director of Integrated Systems, Defendant Mark Romeo, who was supported by his "right-hand man," Defendant Jeffrey Schwab.  Since 1996, Romeo took the lead role in the high-level design, construction, and sale of these systems.  And since 1999, Schwab and his team implemented those ideas, developing detailed specifications and, along the way, encountering and overcoming countless, complex engineering challenges.  Over these 24 years, the Edwards team has developed substantial proprietary know-how and other information that it has diligently kept secret.  Edwards also has kept a considerable amount of other information about its integrated systems business confidential, including pricing information, vendor information, and information concerning its ongoing relationship with key accounts.

5.     One of Edwards's suppliers for proprietary parts for its Synergis system was Defendant HIS, a local parts supplier that made pipes, valves, and other mechanical components.  As part of that relationship, Edwards provided HIS with substantial confidential information,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

including diagrams and details of dozens of specific, custom-specified parts used in Edwards's integrated systems and how those parts were used. All of this information was shared pursuant to the strict terms of a non-disclosure agreement, which prohibited HIS from using any of this information, including the components of or materials used for particular custom parts, for any unauthorized purpose.

6.      By early 2019, Edwards had opened a new, state of the art manufacturing facility in Hillsboro, Oregon, to consolidate its efforts concerning its "Synergis" system, including design, manufacturing, sales, marketing, and service. Defendant Romeo was hoping to be appointed the general manager of the facility. When he was passed over for this promotion, he jumped ship and took a position as President and Chief Innovation Officer at Defendant HIS, a company that has never manufactured a vacuum pump and had no experience designing, developing, or manufacturing integrated vacuum pump systems.

7.      Two days later, Defendant Schwab left Edwards, joining Defendant Romeo at HIS, and assuming the role of HIS Director of Engineering. Over the ensuing months, Romeo, Schwab, and HIS have poached at least a dozen additional Edwards employees all of whom possess many valuable Edwards trade secrets and other confidential information concerning the Synergis system. Among those who have been poached by HIS are: Defendant Joshua Ratchford, Ph.D., Edwards's Applications Manager who possessed detailed knowledge of Edwards's customer relationships and semiconductor fabrication processes, and who joined HIS as its Director of Strategic Accounts; Defendant Collin Mundus, the lead sales specialist for Edwards's sales in the Pacific Northwest (including Hillsboro-based semiconductor manufacturers); a purchaser with detailed knowledge of Edwards's components sourcing and prices; a senior technical support engineer working with a key, Hillsboro-based account; and several other Edwards engineers and technicians who had been given access to valuable and highly sensitive Edwards trade secrets. HIS has also poached Edwards's buyers for and

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

designers of the custom components that HIS supplied to Edwards pursuant to the terms of an NDA.

8.    Within approximately one year after Romeo left Edwards, HIS has remarkably designed, developed, and manufactured an integrated system to compete directly with Edwards's Synergis system.  Today one such system is in the process of being qualified at one of Edwards's key accounts.  Once that qualification process is complete, HIS may be in a position to deploy hundreds or thousands of these systems at that customer's manufacturing facilities in Hillsboro and throughout the world.  HIS's integrated system bears a striking resemblance in material respects to Edwards's Synergis systems, and, on information and belief, HIS has used Edwards's highly confidential trade secret information to design and manufacture its system.

9.    Indeed, it would have been impossible for HIS to develop its competing system in just one year without using Edwards's trade secrets.  It took Edwards *three decades* to solve the many engineering challenges necessary to develop such a system—solutions which it has closely guarded as its trade secrets.  It would have been impossible for anyone to design, develop, and manufacture a competing system in *only one year* without capitalizing on Edwards's trade secret technology.  HIS has also used Edwards's confidential pricing information and information relating to its customer relationships.  By using Edwards's trade secrets as the blueprint for its competing system and marketing efforts, HIS has avoided investing the millions of dollars and decades of development efforts that otherwise would have been required.

10.    Edwards seeks through this lawsuit to preliminarily and permanently enjoin Defendants from making further use of Edwards's confidential, proprietary, and trade secret information; to disclose the extent of the misappropriation of Edwards's trade secrets and confidential information; to compel Defendants to return all such information to Edwards; and to compensate Edwards for the harm it has suffered and continues to suffer as a result of Defendants' willful misconduct.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

11.     Edwards intends to file a motion for a preliminary injunction, to prevent HIS from capitalizing on its wrongdoing and causing Edwards the irreparable harm that will result if HIS's system is qualified by a key Edwards customer.  To support that motion, Edwards is filing concurrently with this Complaint a motion for expedited discovery seeking specific information about the system HIS is currently qualifying at a key Edwards Hillsboro customer for Synergis systems, including detailed schematics, and communications between HIS and that Edwards customer.

### THE PARTIES

12.     Plaintiff Edwards is a world leader in the development and manufacture of sophisticated vacuum products, abatement solutions, and related services used in the semiconductor industry for manufacture of semiconductor-based chips.  It invests tens of millions of dollars per year in research and development of vacuum products like the integrated systems at issue in this lawsuit.  Edwards is a limited liability company organized and existing under the laws of Delaware, with a U.S. principal place of business in Sanborn, New York.  The systems at issue in this case are designed and manufactured in Edwards's state-of-the-art Hillsboro, Oregon facility, which was designed in large part around the development of Edwards's integrated vacuum pump systems.  Edwards is a subsidiary of Atlas Copco AB, a publicly traded company organized under the laws of the Kingdom of Sweden.

13.     On information and belief, Defendant HIS is a corporation organized and existing under the laws of Oregon, with a principal place of business in Hillsboro, Oregon.

14.     On information and belief, Defendant Romeo is a natural person and citizen of Oregon, residing in North Plains, Oregon.

15.     On information and belief, Defendant Schwab is a natural person and citizen of Oregon, residing in Beaverton, Oregon.

16.     On information and belief, Defendant Ratchford is a natural person and a citizen of Oregon, residing in Portland, Oregon.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

17.     On information and belief, Defendant Mundus is a natural person and a citizen of Oregon, residing in Portland, Oregon.

18.     On information and belief, Defendant Leveton is a natural person and a citizen of Oregon, residing in Aloha, Oregon.

19.     On information and belief, Defendant Date is a natural person and a citizen of Oregon, residing in Hillsboro, Oregon.

20.     On information and belief, Defendant Dirksen is a natural person and a citizen of Oregon, residing in Gresham, Oregon.

21.     On information and belief, Defendant Chadbourne is a natural person and a citizen of Oregon, residing in Portland, Oregon.

22.     On information and belief, Defendant Enseleit is a natural person and a citizen of Oregon, residing in Portland, Oregon.

23.     On information and belief, Defendant Hovde is a natural person and a citizen of Oregon, residing in Portland, Oregon.

24.     On information and belief, Defendant Cook is a natural person and a citizen of Oregon, residing in Hillsboro, Oregon.

25.     On information and belief, Defendant Stanley is a natural person and a citizen of Oregon, residing in Gales Creek, Oregon.

26.     On information and belief, Defendant Anderson is a natural person and a citizen of Oregon, residing in Hillsboro, Oregon.

27.     Defendants Does 1-20 are former Edwards employees, the identities of whom are currently unknown to Edwards, who have been recruited and employed by HIS, and are participating in the wrongful conduct described herein.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331 and 1367, because this is a trade secret misappropriation dispute that arises under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

29.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)-(c), because the amount in controversy in this case exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

30.    This Court also has pendent subject matter jurisdiction over the state law claims because they are ancillary to federal causes of action and arise out of the same transaction or occurrences as those federal claims.

31.    This Court has personal jurisdiction over HIS because HIS resides in this district. On information and belief, HIS is an Oregon corporation with its principal place of business at 5500 NE Moore Court, Hillsboro, Oregon.  On information and belief, HIS has also committed acts of misappropriation in this district, which are the subject of this Complaint.

32.    This Court has personal jurisdiction over Romeo because Romeo resides in this district.  On information and belief, Romeo is an Oregon citizen residing in North Plains, Oregon.  On information and belief, Romeo has also committed acts of misappropriation in this district, which are the subject of this Complaint.

33.    This Court has personal jurisdiction over Schwab because Schwab resides in this district.  On information and belief, Schwab is an Oregon citizen residing in Beaverton, Oregon. On information and belief, Schwab has also committed acts of misappropriation in this district, which are the subject of this Complaint.

34.    This Court has personal jurisdiction over Ratchford because Ratchford resides in this district.  On information and belief, Ratchford is an Oregon citizen residing in Portland, Oregon.  On information and belief, Ratchford has also committed acts of misappropriation in this district, which are the subject of this Complaint.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

35.     This Court has personal jurisdiction over each and every other named Defendant, because each such Defendant resides in this district, and/or each named Defendant has committed acts of misappropriation in this district, which are the subject of this Complaint.

36.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1)-(2) because all defendants reside in this district, and a substantial part of the events giving rise to Edwards's claims occurred in this district.

## BACKGROUND

### I.     Overview of Vacuum Pump Requirements for Semiconductor Manufacturing

37.     There is no industry with more particular and exacting requirements than the field of semiconductor manufacturing.  Today's integrated circuit chips can comprise billions of metal-oxide-silicon transistors in an area the size of a human fingernail, which is accomplished through the photolithographic printing of transistor arrays onto silicon semiconductor wafers less than 1/7 the thickness of a human hair.  Because even an atom of material out of place can adversely affect the performance of a chip, they are manufactured in ultra-clean room fabrication facilities (or "fabs") with carefully controlled, dust-free environments.  The manufacture of these chips involves numerous steps, including lithography, etching, vapor deposition, chemical mechanical planarization, oxidation, ion implantation, and diffusion.  Many of the processes essential to semiconductor chip manufacturing must be performed in a vacuum to avoid contamination.

38.     Many semiconductor manufacturing processes result in chemical byproducts that must be safely evacuated from the process tool chambers.  The air that is evacuated from the chambers is then abated to keep hazardous chemicals from being released into the environment. The vacuum and air processing equipment used to maintain these environments is highly specialized.  A single robotic process tool may perform its process steps in as many as a dozen different chambers, each having its own, precise vacuum requirements.  The requirements for the vacuum chambers in semiconductor manufacturing include the Ultra High Vacuum range, which

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

achieves less than one-trillionth ($10^{-12}$) of atmospheric pressure.  In such spaces, there may be as few as 100 particles per cubic centimeter.  Thus, highly sophisticated vacuum pumps are selected for the particularities of each such chamber.

39.    The individual vacuum pumps used to evacuate air from a single chamber used for a single step in the semiconductor manufacturing process can cost as much as $40,000.  Each pump is carefully calibrated to meet the needs of the chamber and that manufacturing process that it supports.

40.    A productive fab can manufacture 100,000 chips per day, using hundreds of process tools, each utilizing multiple chambers, many of which require a vacuum environment.  Such a fab requires thousands of highly sophisticated vacuum pumps and as many as one thousand abatement systems.

41.    The vacuum pumps often reside in a "subfab" layer of the manufacturing facility—a level underneath the fab, which supports the fab.



SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

42.     Semiconductor manufacturing facilities have a number of systems that support the fab and the subfab, including electric power distribution; piping systems for drawing exhaust from the chambers to vacuum pumps and from the vacuum pumps to abatement systems or the fab exhaust; piping systems for the circulation of process chilled water (PCW), which is used to cool equipment in both the subfab and the fab; piping systems for the circulation of nitrogen, which is used to replace any remaining air and create an inert manufacturing environment; helium for leak checking; and interconnect cabling for communication and data transfer.  The manufacturing facilities also have safety systems, so that systems can be shut down in the event of equipment malfunction.

43.     Each vacuum pump may be tied into each of these various systems.  The vacuum pump needs electricity, connection to the pipes that bring exhaust from the fab, connection to the pipes that take the exhaust to the abatement systems, and integration with the safety systems in the facility.  Most vacuum pumps also need to be integrated with facility PCW systems, nitrogen distribution systems, and safety systems in the facility.

44.     To remain competitive, it is essential that the semiconductor manufacturer maximize process tool "up time" and minimize the "footprint" of support machinery such as vacuum pumps and abatement systems.  For example, space in the subfab may be valued at $3000/square foot.  These considerations may be undermined if each of the thousands of vacuum pumps is discretely connected to each of the building utility systems.  Thus, there is a need for systems whereby multiple pumps can be integrated together in connecting to the various water, power, venting, exhaust, and other networks in the subfab.

45.     Such a system would need to meet exacting requirements.  The piping systems used for these various utilities are robust and have highly detailed specifications.  For example, some vacuum pumps in the subfab can produce vacuum levels as high as .0007 millibars, which must be maintained through the forelines, valves, and related components of Edwards's

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

integrated systems.  The system must also meet earthquake and UL requirements, in addition to any other requirements by the end customer specific to their manufacturing facility.

## II.     Edwards's Development of Integrated Vacuum Pump Systems

46.     Edwards has been an innovator in vacuum technology and applications for over 100 years.  Edwards was founded in 1919 in south London by physicist F. D. Edwards, who imported vacuum equipment for use in processes such as light bulb and cathode ray tube manufacturing.  Today, Edwards is the world leader in process-enabling vacuum technology used in products ranging from LEDs, flat panel screens, and semiconductor transistors to solar panels and lithium ion batteries.

47.     Currently, 90% of Edwards's global business is in providing essential vacuum and abatement solutions for some of the world's largest semiconductor chip manufacturers.

48.     Beginning about 30 years ago, Edwards began developing integrated vacuum pump systems for the semiconductor industry.  Rather than have individual vacuum pumps tie separately into a manufacturing facility's various utility systems, Edwards innovated the idea of combining multiple vacuum pumps into integrated systems.  That way, all vacuum pumps that support a single process tool in the fab can be integrated into a single framework, adding efficiency, reducing footprint, and resulting in greater process tool "up time."

49.     Since around 1996, these integrated systems have used specially designed chassis that hold multiple vacuum pumps, allowing efficient deployment into the subfab.  Integrating the vacuum pumps together into a single framework allows the pumps to more efficiently connect to the utility systems in the facility, including a single connection to the electrical power distribution system, a single connection to the PCW distribution system, a single connection to the nitrogen distribution system, and connection to the abatement system, all of which can then be distributed to multiple vacuum pumps in the integrated system.  An integrated system also efficiently ties into the facility's safety systems.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

50.     Over the past 24 years, Edwards has engineered and continuously improved on its proprietary integrated systems.  These integrated systems are designed to house multiple pumps in a small area of floor space.  Integrated systems also reduce down time by permitting individual vacuum pumps to be replaced quickly, without needing to shut down the entire system.

51.     Edwards's integrated systems also contain a centralized control and a graphical user interface, which utilizes proprietary Edwards software and components that control and provide data and analytics concerning the operation of the pumps and other integrated components.

52.     Depending on the particularities and specifications of the various manufacturing processes the vacuum pumps are designed to support, Edwards's integrated systems are sold for between tens of thousands of dollars and hundreds of thousands of dollars each, not including the cost of the vacuum pumps themselves, which are sold separately.  Each integrated system is generally designed to support a single process tool containing the vacuum pumps necessary to support each of the chambers used by that tool.

53.     An example of one type of such an integrated system at Edwards's Hillsboro facility is shown below.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900



54.    Edwards constantly works to improve these aspects of its integrated systems with new, proprietary designs and techniques to remain on the cutting edge of process-enabling vacuum systems.

55.    Beginning in around 1998, Edwards has sold its "Synergis" model of integrated systems primarily to one key account based in Hillsboro, Oregon.  Today over 95% of Synergis or similar systems are sold to that key customer, amounting to hundreds of millions of dollars in annual sales.  Since around 2017, all Synergis systems have been designed, engineered, sold, and serviced from Edwards's facility in Hillsboro.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

### III.     Edwards's Trade Secrets

56.     Edwards's successful marketing and sales of its integrated systems depends in large part on the confidentiality of sensitive technical and business information including technical and scientific features of Edwards's integrated system, as well as business information concerning its component sourcing, costs, pricing, and profit margins for those systems.  A competitor, such as HIS, with access to such information would be able to copy Edwards's products and target its suppliers and customers, exploiting its knowledge of such information to compete unfairly with Edwards.

57.     Edwards's proprietary integrated system technology is the product of 30 years of engineering, research, and development, representing an investment of approximately $100 million and over one hundred thousand person-hours.  Edwards's efforts have produced a system that facilitates the efficient and reliable interoperation of multiple vacuum pumps with associated abatement systems.  Edwards is aware of no other company that has been able to duplicate this achievement.  For example, prior to HIS's recent entry into this market—accelerated by its unlawful use of Edwards's trade secrets—Edwards's only known competitor was EBARA Technologies, Inc., a company that has been working on developing integrated vacuum pump systems for over twenty years.

58.     The design of an integrated system such as Edwards's requires proprietary components, techniques, and know-how decades in the making, embodied in Edwards's confidential drawings, schematics, bills of materials, and product knowledge documentation.  These trade secret components, techniques, and know-how include, without limitation:

- The selection, placement of vacuum pumps, and inclusion of other accessories;

- The selection, design, and placement of valve components in forelines, exhaust lines, and other piping;

- Proprietary methods used in sizing forelines, exhaust lines, and other piping;

- The design and placement of valves, ports, monitors, and meters for system performance evaluation;

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

- The design of specific structures and accessories to facilitate maintenance during operation;

- The selection, placement, composition, and design of O-rings in the various piping and distribution systems, including Edwards's proprietary custom designs;

- The selection and design of exhaust components;

- Proprietary methods used in attaching and finishing structural members of the integrated systems;

- The design and placement of grounding structures in the integrated system frame;

- Proprietary processes used in system purges;

- The selection, design, and placement of electrical, PCW, and nitrogen systems and components;

- Proprietary software, processes, and components used in system control and monitoring;

- The selection, design, and placement of vibration mitigation components;

- Proprietary thermal management systems and components;

- Specific dimensions and tolerances of structural frame components; and

- The selection, sourcing, and design of spooling and other pipe components.

59.     Edwards has also developed extensive proprietary and confidential business information pertaining to its finances and customers, including, without limitation, negotiated agreements, proprietary sourcing information, cost information, price lists, profit information, forecasts, customer and contact lists, purchasing schedules, and information concerning the customers' needs and how they are being met by Edwards.  A competitor, such as HIS, with access to such information would unfairly be able to target Edwards's customers armed with detailed knowledge of Edwards's confidential information, without investing the years of relationship development and market research undertaken by Edwards to develop this information.

60.     Without limitation, the information described in paragraphs 56-59 are hereinafter referred to as "Edwards's Trade Secrets" or "Edwards's Trade Secrets and confidential information."

Page 16 -    COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

61.    Edwards's Trade Secrets are essential to the efficient and effective design, manufacture, maintenance, and marketing of its integrated vacuum systems, and to Edwards's competitive advantage in supplying integrated systems at competitive prices. Without access to such confidential and proprietary information, a company that wanted to develop and market its own integrated vacuum system would have to invest enormous time, expense, and effort in a highly specialized and sophisticated technological environment, the difficulty of which is evidenced by the fact that for decades, only one other company in the world has been able to offer competitive systems.

62.    Edwards has taken reasonable efforts to maintain the secrecy of its valuable trade secrets. For example, all Edwards employees, including the individual defendants in this case, are required to agree to maintain Edwards's information as confidential as a condition of their employment, and to re-affirm that obligation throughout their employment and upon departure. Even before an employee begins work, Edwards's standard offer letter contains a provision notifying the employee of his or her non-disclosure obligations, a term that the employee must acknowledge in writing to accept the employment offer. Upon commencing work, all employees are required to sign the "Edwards Agreement" to assign inventions and safeguard confidential information, which contains as its very first provision:

> I shall not, directly or indirectly, other than in the business of the Company and in the scope of my employment by the Company, disclose or use at any time (either during or subsequent to my said employment) any information, knowledge or data of the Company which is of a secret or confidential nature, unless I shall secure the prior written consent of the Company. Without any limitation intended, the provisions of this paragraph shall extend to and include guides used in the Company's business, customer lists, drawings, letters, and technical, financial and marketing information. …

63.    Employees are also required to acknowledge in writing their understanding of the Edwards Employee Handbook, which contains additional prohibitions against the use and disclosure of Edwards's confidential information. Edwards's employees are also required to acknowledge in writing their understanding of Edwards's "Protocol for Edwards' Staff Interfacing with Third Parties," a policy requiring the execution of a bi-lateral non-disclosure

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

agreement in any situation in which Edwards's confidential information may be disclosed to others. And upon termination of their employment with Edwards, departing employees are again reminded of, and required to re-affirm in writing, their continuing non-disclosure obligations to Edwards.

64.    Edwards's confidential information is also protected by non-disclosure provisions in agreements with its customers, vendors, suppliers, and development partners, consistent with its express policy requiring bi-lateral non-disclosure agreements with any party that might receive Edwards's confidential information.

65.    Additionally, confidential Edwards documentation including drawings, schematics, bills of materials, product knowledge documentation, environment, health, and safety documentation, sourcing information, cost and profit information, price lists, customer and contact lists, and purchasing schedules are stored in central document databases restricted to authorized users who must use an Edwards password to access that information. Edwards's engineering drawings and schematics are further accessible only as encrypted .pdf files, which require a user to enter login credentials even when viewing offline copies of the documents. Engineering 3D models and associated data is stored in a document management system which requires specifically approved access to use.

## IV.    Defendants' Access To and Contractual Obligations to Protect Edwards's Trade Secrets and Confidential Information

### A.    Mark Romeo

66.    Defendant Romeo joined Edwards as a Site Manager in 1996. On March 22, 1996, Romeo signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra.* On April 1, 1996, Romeo signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information. On May 11, 2000, and again on February 11, 2008, Romeo signed further acknowledgements of his non-disclosure obligations in accepting promotions to Technical Support Manager and Senior

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

Technical Support Manager, respectively.  On May 1, 2019, prior to his departure from Edwards, Romeo signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Romeo NDAs."

67.     By the time of his departure, Romeo had risen to become Edwards's Director of Integrated Systems, had been the principal architect of Edwards's integrated systems, and had final approval authority on the design, pricing, terms, and scheduling of every integrated system sold to a key Edwards Hillsboro-based customer.  Commensurate with his broad responsibilities, Romeo had access to and had become familiar with all of Edwards's proprietary drawings, schematics, competitive terms, and sourcing, cost, and pricing information pertaining to those systems.  In 2019, Edwards opened a new, state-of-the-art manufacturing facility in Hillsboro, Oregon.  While it was being erected, Romeo expressed his desire to become General Manager of that facility but was not offered that position.  In May of 2019, Romeo resigned from Edwards and joined HIS as its new President and Chief Innovation Officer.

68.     On information and belief, Romeo has directed HIS to develop and market integrated systems using Edwards's confidential and trade secret information; has disclosed Edwards's confidential and trade secret information to HIS for that purpose; and has induced, and continues to induce, other former Edwards employees to breach their duties of confidentiality to Edwards.  Edwards has never authorized Romeo to disclose or use its confidential or trade secret information following his employment with Edwards.

B.     **Jeff Schwab**

69.     Defendant Schwab joined Edwards in 1999.  On October 8, 1999, Schwab signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra.*  On November 9, 1999, Schwab signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information.  On June 27, 2011, Schwab

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

signed a further acknowledgement of his non-disclosure obligations in accepting a promotion to Program Manager for Integrated Systems.  On May 2, 2019, prior to his departure from Edwards, Schwab signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential or trade secret information.  These instruments are together hereinafter referred to as the "Schwab NDAs."

70.     At the time of his departure, Schwab was Edwards's Engineering Manager, was deeply involved in the design and development of Edwards's integrated systems, and had approval authority on the design, pricing, terms, and scheduling of every integrated system sold to a key Edwards Hillsboro-based customer.  Schwab worked closely with Romeo and was widely known at Edwards as Romeo's "right hand man."  Through his work at Edwards, Schwab had access to and had become familiar with all of Edwards's proprietary drawings, schematics, competitive terms, and sourcing, cost, and pricing information pertaining to those systems.

71.     In May of 2019, just two days after Romeo left to become HIS's President, Schwab left Edwards to join HIS as its Director of Engineering.  On information and belief, Schwab has developed integrated systems for HIS using Edwards's confidential and trade secret information; has disclosed Edwards's confidential and trade secret information to HIS for that purpose; and has induced, and continues to induce, other former Edwards employees to breach their duties of confidentiality to Edwards.  Edwards has never authorized Schwab to disclose or use its confidential or trade secret information following his employment with Edwards.

C.     **Joshua Ratchford**

72.     Defendant Ratchford joined Edwards as an Applications Engineer in 2011.  On October 15, 2011, Ratchford signed an acceptance of his offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and following Ratchford's employment.  On October 19, 2011, Ratchford signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

information.  On November 15, 2011, Ratchford signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*.  On September 5, 2019, prior to his departure from Edwards, Ratchford signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Ratchford NDAs."

73.    At the time of his departure, Ratchford was Edwards's Applications Manager and had developed a deep understanding of the semiconductor manufacturing processes employed by Edwards's integrated systems customers.  In this role, Ratchford was closely involved in the vacuum pump specification and performance calculations which are then incorporated into the design and development of Edwards's integrated systems, and had access to and became familiar with Edwards's proprietary drawings and schematics pertaining to those systems, as well as Edwards's proprietary information concerning customer applications, pricing, competitive terms, and purchasing schedules, as well as a database of Edwards's best known methods for process issues and applications research.

74.    In September of 2019, Ratchford resigned from Edwards and joined HIS as its Director of Strategic Accounts.  On information and belief, Ratchford has marketed integrated systems for HIS using Edwards's confidential and trade secret information; has disclosed Edwards's confidential and trade secret information to HIS for that purpose; and has induced, and continues to induce, other former Edwards employees to breach their duties of confidentiality to Edwards.  Edwards has never authorized Ratchford to disclose or use its confidential or trade secret information following his employment with Edwards.

D.    **Collin Mundus**

75.    Defendant Mundus joined Edwards as a Sales Specialist for the Pacific Northwest in 2017, left Edwards in February 2018, and was re-hired to the same position in June 2018.  On December 1, 2017, and again on June 6, 2018, Mundus signed acceptances of his offer letters for this position, which provided that Edwards's proprietary information was to be maintained as

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

confidential both during and following Mundus's employment. On December 14, 2017, and again on June 6, 2018, Mundus signed written statements acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information. On December 14, 2017, and again on June 6, 2018, Mundus also signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra.* These instruments are together hereinafter referred to as the "Mundus NDAs."

76.    As Edwards's Sales Specialist for the Pacific Northwest and an integral member of the account team that handles a key Edwards customer, Mundus developed a deep understanding of Edwards's customers, marketing, and sales in that region. In this role, Mundus was closely involved in the marketing and sales of Edwards's integrated systems, including to a key Edwards customer, and had access to and became familiar with Edwards's proprietary information concerning customer applications, contact lists, pricing, sales forecasts, competitive terms, and purchasing schedules.

77.    In August of 2020, Mundus resigned from Edwards and joined HIS. On information and belief, Mundus has marketed integrated systems for HIS using Edwards's confidential and trade secret information, and has disclosed Edwards's confidential and trade secret information to HIS for that purpose. Edwards has never authorized Mundus to disclose or use its confidential or trade secret information following his employment with Edwards.

E.    **Elisha Leveton**

78.    Defendant Leveton joined Edwards as an Engineering Assistant in 2017. On October 23, 2017, Leveton signed an acceptance of her offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and after Leveton's employment. On November 14, 2017, Leveton signed a written statement acknowledging her receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

information.  On November 16, 2017, Leveton signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*.  On information and belief, prior to her departure from Edwards on August 10, 2019, Leveton signed a further acknowledgement of her continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Leveton NDAs."

79.     As part of her responsibilities at Edwards, Leveton assembled all pricing and quoting documentation for Edwards's integrated systems and had access to and became familiar with Edwards's proprietary information concerning pricing, costs, and profit information, competitive terms, and purchasing schedules.

80.     In August of 2019, Leveton resigned from Edwards and joined HIS.  On information and belief, Leveton has at least disclosed Edwards's confidential and trade secret information to HIS for the purpose of HIS's marketing of its integrated systems.  Edwards has never authorized Leveton to disclose or use its confidential or trade secret information following her employment with Edwards.

F.     **Richard Date**

81.     Defendant Date joined Edwards as in 2014.  On information and belief, Date signed an acceptance of his offer letter for this position in or around 2013, which provided that Edwards' proprietary information was to be maintained as confidential both during and after Date's employment.  On information and belief, Date signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards' confidential information.  On information and belief, Date signed the Edwards Agreement in 2013 or 2014 containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*.  On information and belief, prior to his departure from Edwards on August 1, 2019, Date signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Date NDAs."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

82.    By the time of his departure, Date was an Onsite Service and Design Support Engineer for Edwards's integrated systems, and had access to and became familiar with Edwards's proprietary drawings and schematics pertaining to those systems.

83.    In August of 2019, Date resigned from Edwards and joined HIS as a Project Manager.  On information and belief, Date has designed and manufactured integrated systems for HIS using Edwards's confidential and trade secret information, and has disclosed Edwards's confidential and trade secret information to HIS for that purpose.  Edwards has never authorized Date to disclose or use its confidential or trade secret information following his employment with Edwards.

G.    **Jonathan Dirksen**

84.    Defendant Dirksen joined Edwards as a Project Engineer in Thermal Applications in 2018.  On January 8, 2018, Dirksen signed an acceptance of his offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and after Dirksen's employment.  On January 7, 2018, Dirksen signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information.  Dirksen also signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra.*  On August 12, 2019, prior to his departure from Edwards, Dirksen signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Dirksen NDAs."

85.    Through his work at Edwards's Innovation Center, Dirksen developed a deep understanding of the proprietary thermal management technology employed in Edwards's integrated systems.  Dirksen was closely involved in the design and development of Edwards's integrated systems, particularly their cutting-edge thermal management components and other confidential developments, and had access to and became familiar with Edwards's proprietary

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

drawings and schematics pertaining to those systems, as well as Edwards's proprietary

information concerning customer applications, sourcing information, and cost information.

86.    In August of 2019, Dirksen resigned from Edwards and joined HIS as a Lead

Mechanical Engineer.  On information and belief, Dirksen has designed integrated systems for

HIS using Edwards's confidential and trade secret information, and has disclosed Edwards's

confidential and trade secret information to HIS for that purpose.  Edwards has never authorized

Dirksen to disclose or use its confidential or trade secret information following his employment

with Edwards.

H.    **John Chadbourne**

87.    Defendant Chadbourne joined Edwards as a Mechanical Design Engineer in 2018.

On January 12, 2018, Chadbourne signed an acceptance of his offer letter for this position, which

provided that Edwards's proprietary information was to be maintained as confidential both

during and following Chadbourne's employment.  On January 4, 2018, Chadbourne signed a

written statement acknowledging his receipt and understanding of the Edwards Employee

Handbook, which contained additional restrictions on the use or disclosure of Edwards's

confidential information.  Also, in January 2018, Chadbourne signed the Edwards Agreement

containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*.  On

information and belief, prior to his departure from Edwards on August 22, 2019, Chadbourne

signed a further acknowledgement of his continuing duty not to use or disclose Edwards's

confidential information.  These instruments are together hereinafter referred to as the

"Chadbourne NDAs."

88.    In his work at Edwards, Chadbourne was involved in the design, development,

and maintenance of Edwards's integrated systems, and had access to and became familiar with

Edwards's proprietary drawings and schematics pertaining to those systems, as well as

Edwards's proprietary information concerning customer applications, component sourcing, and

cost information.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

89.    In August of 2019, Chadbourne resigned from Edwards and joined HIS as a Lead Mechanical Design Engineer.  On information and belief, Chadbourne has designed and manufactured integrated systems for HIS using Edwards's confidential and trade secret information, and has disclosed Edwards's confidential and trade secret information to HIS for that purpose.  Edwards has never authorized Chadbourne to disclose or use its confidential or trade secret information following his employment with Edwards.

I.    **Andrews Enseleit**

90.    Defendant Enseleit joined Edwards as an Applications Engineer in 2011.  On January 9, 2018, and again on August 3, 2018 in connection with a relocation from New York, Enseleit signed acceptances of his offer letters for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and following Enseleit's employment.  On January 25, 2018, Enseleit signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information.  On January 30, 2018, Enseleit signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra.*  On October 4, 2019, prior to his departure from Edwards, Enseleit signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Enseleit NDAs."

91.    In his work at Edwards, Enseleit was involved in the design and development of Edwards's integrated systems and had access to and became familiar with Edwards's proprietary drawings and schematics pertaining to those systems, as well as Edwards's proprietary information concerning component sourcing and costs.

92.    In October of 2019, Enseleit resigned from Edwards and joined HIS as a Mechanical Design Engineer.  On information and belief, Enseleit has designed and manufactured integrated systems for HIS using Edwards's confidential and trade secret

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

information, and has disclosed Edwards's confidential and trade secret information to HIS for that purpose.  Edwards has never authorized Enseleit to disclose or use its confidential or trade secret information following his employment with Edwards.

J.     **Travis Hovde**

93.     Defendant Hovde joined Edwards as an Abatement Specialist in 2015.  On May 20, 2015, Hovde signed an acceptance of his offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and following Hovde's employment.  On May 20, 2015, Hovde signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information.  Also on May 20, 2015, Hovde signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*.  On January 17, 2020, prior to his departure from Edwards, Hovde signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Hovde NDAs."

94.     At the time of his departure, Hovde was a Senior Technical Support Engineer at Edwards and was closely involved in the installation and maintenance of Edwards's integrated systems.  In this role, Hovde had access to and became familiar with Edwards's proprietary drawings, schematics, and know-how pertaining to those systems, as well as Edwards's proprietary information concerning customer applications and purchasing schedules.  In January of 2020, Hovde resigned from Edwards and joined HIS as a Project Engineer for Development Accounts.  On information and belief, Hovde has marketed integrated systems and related services for HIS using Edwards's confidential and trade secret information, and has disclosed Edwards's confidential and trade secret information to HIS for that purpose.  Edwards has never authorized Hovde to disclose or use its confidential or trade secret information following his employment with Edwards.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

K.    **Chad Cook**

95.    Defendant Cook joined Edwards as a Field Service Engineer in 2017.  On November 17, 2017, Cook signed an acceptance of his offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and after Cook's employment.  On November 16, 2017, Cook signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information.  On November 16, 2017, Cook also signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*.  On information and belief, prior to his departure from Edwards on or about August 17, 2019, Cook signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information.  These instruments are together hereinafter referred to as the "Cook NDAs."

96.    At the time of his departure, Cook was a technologist in Edwards's Innovation Center, and was involved in Edwards's cutting-edge developments for its integrated systems, including the fabrication of system prototypes.  In this role, Cook had access to and became familiar with Edwards's proprietary drawings, schematics, and know-how pertaining to those systems.

97.    In August of 2019, Cook resigned from Edwards and joined HIS.  On information and belief, Cook has disclosed Edwards's confidential and trade secret information to HIS for the purpose of HIS's design and marketing of its integrated vacuum pump systems.  Edwards has never authorized Cook to disclose or use its confidential or trade secret information following his employment with Edwards.

L.    **Toby Douglas Stanley**

98.    Defendant Stanley joined Edwards as a Project Engineer in 2013.  On October 2, 2013, Stanley signed an acceptance of his offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and after Stanley's employment.  On October 2, 2013, Stanley also signed a written statement

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards's confidential information. On information and belief, Stanley signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*. On August 14, 2019, prior to his departure from Edwards, Stanley signed a further acknowledgement of his continuing duty not to use or disclose Edwards's confidential information. These instruments are hereinafter referred to as the "Stanley NDAs."

99.     Through his work at Edwards, Stanley developed extensive knowledge of innovation activity and confidential developments pertaining to Edwards's integrated systems, vacuum pumps, and abatement systems, and had access to and became familiar with Edwards's proprietary drawings, schematics, and know-how pertaining to those systems.

100.     In August of 2019, Stanley resigned from Edwards and joined HIS. On information and belief, Stanley has at least disclosed Edwards's confidential and trade secret information to HIS for the purpose of HIS's design and marketing of its integrated systems and related services. Edwards has never authorized Stanley to disclose or use its confidential or trade secret information following his employment with Edwards.

M.     **Paul Anderson**

101.     Defendant Anderson joined Edwards as a Project Engineer in 2015. On May 19, 2015, Anderson signed an acceptance of his offer letter for this position, which provided that Edwards's proprietary information was to be maintained as confidential both during and after Anderson's employment. On May 19, 2015, Anderson also signed a written statement acknowledging his receipt and understanding of the Edwards Employee Handbook, which contained additional restrictions on the use or disclosure of Edwards' confidential information. On June 6, 2015, Anderson signed the Edwards Agreement containing, *inter alia*, the non-disclosure provisions recited in paragraph 62, *supra*. On August 9, 2019, prior to his departure from Edwards, Anderson signed a further acknowledgement of his continuing duty not to use or

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

disclose Edwards's confidential information. These instruments are together hereinafter referred to as the "Anderson NDAs," and together with the Romeo, Schwab, Ratchford, Mundus, Leveton, Date, Dirksen, Chadbourne, Enseleit, Hovde, Cook, and Stanley NDAs, as the "Edwards Employee NDAs."

102.    By the time of his departure, Anderson was a Conversion Lead and Senior Project Engineer, was closely involved in the maintenance and improvement of Edwards's integrated systems, and had access to and became familiar with Edwards's proprietary drawings, schematics, and know-how pertaining to those systems, as well as Edwards's proprietary pricing information.

103.    In August of 2019, Anderson resigned from Edwards and joined HIS. On information and belief, Anderson has designed and manufactured integrated systems for HIS using Edwards's confidential and trade secret information, and has disclosed Edwards's confidential and trade secret information to HIS for that purpose. Edwards has never authorized Anderson to disclose or use its confidential or trade secret information following his employment with Edwards.

104.    Working with Defendant Romeo, HIS has been involved in poaching at least 19 Edwards employees who all were in possession of Edwards's Trade Secrets relating to its integrated vacuum pump systems, including employees not named as Defendants in this action, and has attempted to recruit away others, including at least a research and development engineer and Edwards's Business Controller. The unlawful use of Edwards's Trade Secrets and confidential information known to these employees and misappropriated by the Defendants has enabled HIS to develop and market its competing integrated systems on a dramatically accelerated timetable, which would not have been possible without their unauthorized use of Edwards's Trade Secrets and confidential information.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

**V.    Defendants' Misappropriation of Edwards's Trade Secrets and Confidential Information**

105.    Between May 2019 and August 2020, 20 Edwards employees resigned from Edwards and took employment in similar positions at HIS, all of whom were closely involved in the design, engineering, manufacture, marketing, and/or sales of Edwards's Synergis integrated systems.  Each of these employees was subject to a continuing duty to maintain the confidentiality of the Edwards confidential and trade secret information described above.

106.    On October 2, 2019, following the departure of individual Defendants Romeo, Schwab, and Ratchford, Atlas Copco North America LLC, Edwards's parent company, sent a letter to HIS informing HIS of the former Edwards employees' continuing duty to maintain Edwards information as confidential, including competitive information concerning Edwards's technology, clients, and business.  At the same time, Edwards sent letters to Defendants Romeo, Schwab, and Ratchford individually reminding them of their continuing non-disclosure obligations.

107.    In response, HIS's CEO, Jason Frank, was dismissive of Edwards's concerns, telling an Edwards manager that the letters had no legal effect on HIS or any of their employees.

108.    In or about July of 2020, Edwards learned that HIS had been approved to qualify its own integrated vacuum system in a key Edwards Hillsboro-based customer's facility, which on information and belief is identical in material respects to Edwards's proprietary Synergis system.  On information and belief, in addition to that customer's sites in Oregon and other locations around the world, HIS is targeting other Edwards semiconductor customers.

109.    Prior to 2019, HIS had never designed, engineered, manufactured, marketed, or sold vacuum pumps or integrated vacuum pump systems.  HIS's business had instead been limited to providing steel components and weldments such as pipes, fittings, flanges, valves, and adaptors to its manufacturing customers, including Edwards.

110.    Upon information and belief, HIS's efforts to develop an integrated vacuum pump system began when it retained Romeo in about May 2019.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

111.     However, within approximately one year, HIS has designed and manufactured an integrated vacuum system, and has provided to a key Edwards customer at least one completely assembled and operational sample of that system.  That customer is currently in the process of qualifying HIS's integrated system to allow HIS to become a qualified supplier of such systems going forward.

112.     Edwards's Synergis integrated system is the product of 30 years of proprietary research, development, and engineering.  HIS could not possibly have designed, developed, and manufactured from scratch a comparable system within one year without the use of Edwards's proprietary information.  HIS knew or should have known that Edwards's former employees were not at liberty to share that trade secret information with their new employer.  On information and belief, none of the individual defendants had had any experience with integrated vacuum systems outside of their employment by Edwards, and they could not have developed such systems for HIS without the unauthorized use and disclosure of Edwards's trade secrets and other confidential information in violation of the Edwards Employee NDAs.  Indeed, one former HIS employee has admitted that HIS directly copied proprietary Edwards drawings in designing HIS's integrated system.

113.     HIS has designed its system to compete directly with Edwards's Synergis system, including by designing it to fit within a price point that is lower than the confidential prices Edwards currently charges for comparable configurations of its Synergis systems.  Without proprietary knowledge of Edwards's confidential pricing information, cost information, and information relating to Edwards's relationship with a key Hillsboro-based customer, HIS could not have designed an integrated system targeted to compete directly with Edwards's Synergis systems in this manner.

114.     Without years of market research that the individual defendants learned at Edwards--which HIS knew they were under a continuing duty to maintain as confidential--HIS could not have gained this accelerated pathway to making and selling integrated vacuum pump

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

systems. Indeed, none of the individual defendants had any experience marketing or selling integrated vacuum systems prior to their employment at Edwards. They could not have successfully marketed such systems on an accelerated time frame without the unauthorized use and disclosure of Edwards's Trade Secrets and confidential information in violation of the Edwards Employee NDAs.

115. HIS has also had direct access to some of Edwards's Trade Secrets and confidential information as a supplier of components for Edwards's integrated systems, subject to a non-disclosure agreement executed by HIS on March 6, 2015 ("the HIS NDA"). That agreement provided, among other things, that HIS would maintain Edwards's information as confidential and not use Edwards's confidential information for any purpose other than its collaboration with Edwards.

116. Under the terms of that agreement, Edwards disclosed to HIS proprietary and trade secret engineering drawings and specifications for flanges, spools, bellows, and ball valves used in Edwards's integrated systems.

117. On information and belief, HIS has unlawfully used Edwards's Trade Secrets and confidential information to develop and market its competing integrated systems on a dramatically accelerated schedule, which would not have been possible without HIS's unauthorized use of Edwards's Trade Secrets and confidential information.

118. The development and marketing of HIS's integrated vacuum pump systems by HIS and former Edwards employees using Edwards's Trade Secrets and confidential information breaches the Edwards Employee NDAs and the HIS NDA and constitutes unlawful misappropriation of Edwards's Trade Secrets.

119. Defendants' misappropriation has been willful and malicious.

120. If not enjoined, Defendants' misappropriation of Edwards's trade secrets would give HIS an unfair competitive advantage in the market for integrated vacuum pump systems. Among other things, HIS stands poised to usurp hundreds of millions of dollars in annual sales to

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

one key Edwards customer alone, without having had to invest the decades of effort and tens of millions of dollars required to research, develop, and market such technology themselves.

## VI.    Damages

121.    Edwards has sustained and will continue to sustain significant damages, yet to be completely identified and quantified, that are the direct and proximate result of the wrongful acts of Defendants described herein.

122.    Such damages are ongoing and include, without limitation, (i) damages to Edwards's business and operations resulting from the theft, conversion, and wrongful use of its trade secrets and confidential information by Defendants for the benefit of HIS and to the detriment of Edwards, which has impaired and continues to impair Edwards's ability to compete in the marketplace; (ii) damages to Edwards's business and operations resulting from the impairment of its investment in the development and marketing of its integrated vacuum systems, which investment was adversely affected as a direct and proximate result of the Defendants' wrongful actions; and (iii) damages resulting from Defendants' improper acquisition, use, and/or disclosure of Edwards's Trade Secrets and confidential information, which has significant economic value, thereby depriving Edwards of its exclusive use of this information.

123.    Edwards is and continues to be irreparably harmed by Defendants' continued unlawful possession, use, and disclosure of Edwards's Trade Secrets and confidential information, including in connection with Defendants' design, development, manufacture, marketing, sale, and/or offers to sell integrated vacuum pump systems, which is ongoing.  Unless Defendants are enjoined from making any further unauthorized use or disclosure of Edwards's Trade Secrets and confidential information, they will continue to capitalize, knowingly and intentionally, on Edwards's Trade Secrets and confidential information to which they have no rightful claim or license.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

**COUNT I**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) *et seq.***
**(Against all Defendants)**

124.    Edwards incorporates by reference the allegations in paragraphs 1-123 as if fully set forth herein.

125.    Edwards's Trade Secrets include technological and business information related to its integrated vacuum pump systems, which are products used in interstate and foreign commerce.

126.    Edwards's Trade Secrets individually and collectively have independent economic value to Edwards, as they are the result of tens of millions of dollars invested and decades of effort by Edwards to research, develop, market, and sell integrated vacuum pump systems using the associated trade secrets, which its customers consider to be technically superior and more affordable compared to other competitive offerings.

127.    Edwards's Trade Secrets individually and collectively would be invaluable to any entity interested in developing integrated vacuum pump systems, including Defendants, because the trade secrets would allow that entity to develop and market such technology with far less investment of time and resources than would be needed to develop and market the technology independently.

128.    Edwards's Trade Secrets are individually and collectively not generally known to the general public or others within the trade.

129.    Edwards's Trade Secrets are individually and collectively not readily ascertainable by others without a significant expenditure of time, expense, and effort.

130.    To the extent Edwards has disclosed its trade secrets to Defendants, it did so pursuant to the terms of non-disclosure agreements that expressly prohibit the unauthorized use or disclosure of Edwards's Trade Secrets.

131.    The individual and combined benefits of Edwards's Trade Secrets give Edwards a significant competitive advantage in the marketplace.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

132.    Edwards has taken reasonable measures to maintain the secrecy of its trade secrets by, among other things, requiring that its employees, vendors, suppliers, development partners, and customers enter into written non-disclosure agreements, and restricting access to its electronic systems and documents to ensure that only authorized personnel can access Edwards's Trade Secrets.

133.    The individual Defendants, by virtue of their employment with Edwards, had access to Edwards's Trade Secrets but were at all relevant times—including after their employment with Edwards—under a duty to maintain the secrecy of Edwards's Trade Secrets pursuant to the terms of their non-disclosure agreements with Edwards.

134.    Consistent with the terms of those agreements, the individual defendants and HIS—at least through its President, Defendant Romeo, and through Edwards's express notifications—were aware that Edwards endeavored to maintain the secrecy of its trade secrets.

135.    As of the date of this Complaint, HIS is employing the individual defendants, is in possession of and is improperly exploiting Edwards's Trade Secrets.

136.    Through their current employment at HIS, the individual defendants continue to aid HIS in using Edwards's Trade Secrets.

137.    On information and belief, HIS and Romeo specifically solicited the employment of the other individual defendants because of their knowledge of the design, manufacture, marketing, and sale of Edwards's integrated vacuum systems, including Edwards's valuable trade secrets in those systems.

138.    Defendants have attempted to persuade other Edwards employees to leave Edwards to work for HIS, and those attempts are active and ongoing to the present time.

139.    HIS acquired one or more of Edwards's Trade Secrets from the individual defendants and other Edwards employees by inducing them to use and/or disclose Edwards's Trade Secrets in breach of the Edwards Employee NDAs and other non-disclosure obligations,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

notwithstanding that HIS knew or should have known that all former Edwards employees were under ongoing non-disclosure obligations to Edwards.

140.    Defendants misappropriated Edwards's Trade Secrets by using and/or disclosing them, without Edwards's knowledge or consent and in violation of Defendants' non-disclosure agreements, to design, develop, test, analyze, replicate, manufacture, market, sell, and/or offer to sell integrated vacuum pump systems that would be competitive with Edwards's systems, to market and sell integrated vacuum pump systems to Edwards's key customers, and to otherwise effectuate a scheme to wrongfully misappropriate Edwards's valuable trade secrets for their own commercial advantage and to Edwards's detriment.

141.    At the time of Defendants' misappropriation and wrongful use and/or disclosure of Edwards's Trade Secrets, Defendants knew that they had acquired Edwards's Trade Secrets under circumstances giving rise to a duty to maintain the secrecy thereof because, among other things, the individual defendants—including HIS's President, Defendant Romeo—were subject to the Edwards Employee NDAs.

142.    At the time of Defendants' misappropriation and wrongful use and/or disclosure of Edwards's Trade Secrets, each Defendant, including HIS, knew, and/or had reason to know, that the individual defendants were subject to the Edwards Employee NDAs and that HIS's acquisition and use of Edwards's Trade Secrets violated the obligations of non-disclosure and non-use created by those NDAs.

143.    The wrongful disclosure and/or use of Edwards's Trade Secrets has given and continues to give HIS an unfair benefit and unfair advantage in the marketplace in competition with Edwards.

144.    Defendants' misappropriation has been willful and malicious.

145.    Defendants' misappropriation of Edwards's Trade Secrets is ongoing in nature.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

146.    As a direct and proximate result of Defendants' unlawful misappropriation of Edwards's Trade Secrets, Edwards has sustained actual damages, and will continue to accrue and sustain such damage in the future on an ongoing basis.

147.    As a direct and proximate result of Defendants' unlawful misappropriation of Edwards's Trade Secrets, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until Defendants' wrongful conduct is enjoined.

**COUNT II**
**Violation of the Oregon Uniform Trade Secrets Act, Or. Rev. Stat. §§ 646.461 *et seq.***
**(Against all Defendants)**

148.    Edwards incorporates by reference the allegations in paragraphs 1-147 as if fully set forth herein.

149.    The wrongful disclosure and/or use of Edwards' Trade Secrets has given and continues to give HIS an unfair benefit and unfair advantage in the marketplace over Edwards, the rightful owner of the Edwards Trade Secrets.

150.    Defendants' misappropriation has been willful and malicious.

151.    Defendants' misappropriation of Edwards's Trade Secrets is ongoing in nature.

152.    As a direct and proximate result of Defendants' unlawful misappropriation of Edwards's Trade Secrets, Edwards has sustained actual damages, and will continue to accrue and sustain such damage on an ongoing basis.

153.    As a direct and proximate result of Defendants' unlawful misappropriation of Edwards's Trade Secrets, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until Defendants' wrongful conduct is enjoined.

**COUNT III**
**Breach of Contract**
**(Against all Individual Defendants)**

154.    Edwards incorporates herein by reference the allegations in paragraphs 1-153 as if fully set forth herein.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax:503-796-2900

155.    At all times material hereto, each individual defendant was subject to one or more of the Edwards Employee NDAs, the terms of which, among other things, prohibited the individual Defendants both during and after their employment with Edwards from making any unauthorized use or disclosure of Edwards's Trade Secrets and other confidential information.

156.    For example, each individual Defendant agreed, among other things, that:

> I shall not, directly or indirectly, other than in the business of the Company and in the scope of my employment by the Company, disclose or use at any time (either during or subsequent to my said employment) any information, knowledge or data of the Company which is of a secret or confidential nature, unless I shall secure the prior written consent of the Company.  Without any limitation intended, the provisions of this paragraph shall extend to and include guides used in the Company's business, customer lists, drawings, letters, and technical, financial and marketing information. …

157.    Each individual Defendant breached their Edwards Employee NDAs when they unlawfully used and/or disclosed Edwards's Trade Secrets and confidential information through their work with HIS to design, develop, test, manufacture, market, sell, and/or offer to sell integrated vacuum pump systems.

158.    As a direct and proximate result of the individual Defendants' wrongful conduct, Edwards has sustained actual damages as described above, and will continue to accrue and sustain such damages in the future on an ongoing basis.

159.    As a direct and proximate result of the individual Defendants' wrongful conduct, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until the individual Defendants' wrongful conduct is enjoined.

**COUNT IV**
**Breach of Contract**
**(Against HIS)**

160.    Edwards incorporates herein by reference the allegations in paragraphs 1-159 as if fully set forth herein.

161.    At all times material hereto, HIS was subject to the HIS NDA, the terms of which, among other things, prohibited HIS from making any unauthorized use or disclosure of Edwards's Trade Secrets and other confidential information.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

162.    HIS breached the HIS NDA when it unlawfully used Edwards's Trade Secrets and confidential information to design, develop, test, manufacture, market, sell, and/or offer to sell integrated vacuum pump systems.

163.    As a direct and proximate result of HIS's wrongful conduct, Edwards has sustained actual damages as described above, and will continue to accrue and sustain such damages in the future on an ongoing basis.

164.    As a direct and proximate result of HIS's wrongful conduct, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until the individual Defendants' wrongful conduct is enjoined.

## COUNT V
### Tortious Interference with Economic Relations
### (Against Defendants HIS, Romeo, Schwab, Ratchford, and Mundus)

165.    Edwards incorporates the allegations in paragraphs 1-164 as if fully set forth herein.

166.    Edwards has had business and prospective economic relationships with its customers, including but not limited to a key Hillsboro-based semiconductor manufacturer.  For example, for nearly the past 30 years, Edwards has sold integrated vacuum pump systems to that customer for use in semiconductor manufacturing processes, a business that currently generates hundreds of millions of dollars in annual revenue to Edwards.

167.    Defendants HIS, Romeo, Schwab, Ratchford, and Mundus intended to interfere with Edwards's business and prospective economic relationships with its customers, including but not limited to Edwards's key Hillsboro-based customer, by inducing those customers to purchase integrated vacuum pump systems from HIS instead of Edwards.  On information and belief, HIS's interference with Edwards's relationship with that key customer has been successful in that regard.

168.    Defendants HIS, Romeo, Schwab, Ratchford, and Mundus's interference with Edwards's relationships has been accomplished through improper means, including their

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

misappropriation and conversion of Edwards's Trade Secrets and confidential information; their unlawful use of that information in marketing and offering to sell integrated vacuum pump systems to Edwards's customers; Defendants Romeo, Schwab, Ratchford, and Mundus's breach of the Romeo NDAs, Schwab NDAs, Ratchford NDAs, and Mundus NDAs; and at least Defendants HIS, Romeo, Schwab, and Ratchford's inducement of other former Edwards employees to breach their non-disclosure agreements with Edwards.

169.    With respect to at least Edwards's key, Hillsboro-based customer, on information and belief, Defendants HIS, Romeo, Schwab, Ratchford, and Mundus have, as a direct and proximate result of this wrongful conduct, induced that customer to purchase integrated vacuum systems from HIS instead of Edwards, damaging Edwards's business and prospective economic relationships with that customer.

170.    With respect to at least that key Edwards customer, Edwards has suffered damages as a direct and proximate result of Defendants HIS, Romeo, Schwab, Ratchford, and Mundus's intentional interference, including but not limited to revenue for sales of integrated vacuum pump systems that customer will purchase from HIS instead of Edwards as a result of the wrongful conduct described herein.

**COUNT VI**
**Conversion**
**(Against all Defendants)**

171.    Plaintiff hereby incorporates the allegations in paragraphs 1-170 as if they were fully set forth herein.

172.    Edwards is the owner of the Edwards Trade Secrets and confidential and proprietary information misappropriated by Defendants.

173.    At all times material hereto, Defendants knew that the information they misappropriated from Edwards constituted sensitive, proprietary, confidential, and/or trade secret information that belonged to Edwards.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

174.    Defendants' actions constitute an unlawful and intentional conversion of Edwards' proprietary, trade secret, and confidential information for Defendants' economic benefit, and to the economic detriment of Edwards, as Defendants have exercised dominion and control over that property which has interfered with Edwards's exclusive control and ownership of it.

175.    Defendants were without right, privilege, or justification to deprive Edwards of its rightful and exclusive ownership and use of its proprietary, trade secret, and confidential information.

176.    As a direct and proximate result of Defendants' unlawful conversion of Edwards's proprietary, trade secret, and confidential information, Edwards has sustained actual damages, and will continue to accrue and sustain such damages in the future on an ongoing basis.

177.    As a direct and proximate result of Defendants' unlawful conversion of Edwards's proprietary, trade secret, and confidential information, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until Defendants' wrongful conduct is enjoined.

**COUNT VII**
**Breach of Duty of Loyalty**
**(Against Defendant Romeo)**

178.    Edwards incorporates the allegations of paragraphs 1-177 as if fully set forth herein.

179.    As an Edwards employee, Defendant Romeo owed Edwards a duty of loyalty, which included the obligation not to compete with or otherwise injure Edwards.

180.    Defendant Romeo left Edwards to join HIS on May 1, 2019.  Defendant Schwab left Edwards and joined HIS just two days later on May 3, 2019.  Defendant Schwab worked closely with Defendant Romeo and was widely known at Edwards as Defendant Romeo's "right hand man."

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

181.    On information and belief, prior to his departure from Edwards, Defendant Romeo induced at least Defendant Schwab, and potentially others, to resign from Edwards and take up employment at HIS in competition with Edwards.

182.    On information and belief, prior to his departure from Edwards, Romeo accessed and collected Edwards's Trade Secret and confidential information in furtherance of his unlawful plans to use that information for the benefit of HIS in his role as HIS's new president.

183.    As a direct and proximate result of Defendant Romeo's wrongful conduct, Edwards has sustained actual damages as described above, and will continue to accrue and sustain such damage in the future on an ongoing basis.

184.    As a direct and proximate result of Defendant Romeo's wrongful conduct, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until Defendants' wrongful conduct is enjoined.

**COUNT VIII**
**Civil Conspiracy**
**(Against all Defendants)**

185.    Edwards incorporates the allegations of paragraphs 1-184 as if fully set forth herein.

186.    HIS agreed and conspired with each of the individual Defendants, and the individual Defendants agreed and conspired with each other, to knowingly and intentionally solicit, obtain, and unlawfully use and/or disclose Edwards's proprietary, trade secret, and confidential information in connection with a scheme to design, develop, manufacture, market, sell, and/or offer to sell integrated vacuum pump systems that would permit HIS to gain an unfair competitive advantage and harm Edwards's ability to compete in the market for that technology.

187.    As alleged herein, the acts through which Defendants conspired to attain this end were unlawful.  Specifically, in pursuit of their conspiracy, Defendants at least (i) unlawfully misappropriated, used, and/or disclosed Edwards's proprietary, trade secret, and confidential information to design, develop, manufacture, market, sell, and/or offer to sell integrated vacuum

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

pump systems; (ii) intentionally interfered in Edwards's business and prospective economic relationships with its customers as alleged herein; and (iii) induced Edwards employees to breach their non-disclosure agreements with Edwards.

188.    As a direct and proximate result of Defendants' wrongful conduct, Edwards has sustained actual damages, and will continue to accrue and sustain such damage in the future on an ongoing basis.

189.    As a direct and proximate result of Defendants' wrongful conduct, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until Defendants' wrongful conduct is enjoined.

**COUNT IX**
**Unjust Enrichment**
**(Against all Defendants)**

190.    Edwards incorporates the allegations of paragraphs 1-189 as if set forth fully herein.

191.    As described herein, Defendants unlawfully and intentionally solicited, obtained, used, and/or disclosed Edwards's proprietary, trade secret, and confidential information in violation of applicable laws for their own benefit.

192.    At all times material hereto, Defendants knew that such benefits were conferred upon them, and voluntarily accepted and retained such benefits, knowing that the information had been wrongfully misappropriated from Edwards.

193.    Defendants have been unjustly enriched by their improper and unlawful use of Edwards's proprietary, trade secret, and confidential information in pursuit of economic benefits.

194.    The fair value of the benefits wrongfully obtained by Defendants is the value they have derived from obtaining, disclosing, and/or using Edwards's proprietary, trade secret, and confidential information, and from their ongoing use of such information to design, develop, manufacture, market, sell, and/or offer to sell integrated vacuum pump systems.  Accordingly,

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

Defendants have been unjustly enriched in an amount to be determined, and Edwards is entitled to be paid that amount.

195.    As a direct and proximate result of Defendants' wrongful conduct, Edwards has sustained actual damages, and will continue to accrue and sustain such damage in the future on an ongoing basis.

196.    As a direct and proximate result of Defendants' wrongful conduct, Edwards has suffered irreparable harm, and will continue to suffer such harm unless and until Defendants' wrongful conduct is enjoined.

**PRAYER FOR RELIEF**

197.    WHEREFORE, Edwards respectfully requests that the Court enter judgment in its favor and against Defendants HIS, Mark Romeo, Jeffrey Schwab, Joshua Ratchford, Collin Mundus, Elisha Leveton, Richard Date, Jonathan Dirksen, John Chadbourne, Andrew Enseleit, Travis Hovde, Chad Cook, Toby Douglas Stanley, and Paul Anderson, granting Edwards the following relief:

A.    Actual and compensatory damages in amounts to be proven at trial, including disgorgement of HIS's profits to the extent not accounted for in actual and compensatory damages;

B.    Permanent injunctive relief, including an order requiring Defendants to return and not to use Edwards's proprietary, trade secret, and confidential information; to prevent the continued manufacture and/or sale of any integrated vacuum pump system using that information; to stop Defendants from soliciting Edwards employees to join HIS for the purpose of furthering the sale or manufacture of products based on Edwards's trade secrets and confidential information; and to

Page 45 -    COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900

stop any other acts as may be necessary to protect Edwards's proprietary, trade secret, and confidential information;

C.     Exemplary damages pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(C);

D.     Punitive damages pursuant to the Oregon Uniform Trade Secrets Act, Or. Rev. Stat. § 646.465(3);

E.     Other punitive and exemplary damages;

F.     Edwards's attorneys' fees pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D); the Oregon Uniform Trade Secrets Act, Or. Rev. Stat. § 646.467(3); and other applicable authority;

G.     Edwards's costs and pre-judgment and post-judgment interest; and

H.     Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Edwards Vacuum LLC respectfully requests a trial by jury of all issues so triable.

Dated this 29th day of September, 2020.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


By:     *s/ Nika Aldrich*
Nika Aldrich, OSB #160306
Scott D. Eads, OSB #910400
Jason A. Wrubleski, OSB #120524
Telephone:  503.222.9981

*Attorneys for Plaintiff,
Edwards Vacuum LLC*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax:503-796-2900