# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EDWARDS VACUUM, LLC**, | Case No. 3:20-cv-1681-SI |
| Plaintiff, | **OPINION AND ORDER ON PLAINTIFF'S MOTION TO TRANSFER VENUE FOR COUNTERCLAIMS** |
| v. | |
| **HOFFMAN INSTRUMENTATION SUPPLY, INC. d/b/a/ HIS INNOVATIONS GROUP, MARK ROMEO, JEFFREY SCHWAB, ELISHA LEVETON, JOHN CHADBOURNE,** and **ANDREW ENSELEIT**, | |
| Defendants. | |

Nicholas F. Aldrich, Jr., Scott D. Eads, and Jason A. Wrubleski, SCHWABE, WILLIAMSON & WYATT PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204; John D. Vandenberg, KLARQUIST SPARKMAN LLP, One World Trade Center, 121 SW Salmon Street, Suite 1600, Portland, OR 97204; and Justin W. Bernick, HOGAN LOVELLS US LLP, 555 13th Street NW, Washington, DC 20004. Of Attorneys for Plaintiff.

David H. Angeli, Joanna T. Perini-Abbott, Edward A. Piper, and Michelle Holman Kerin, ANGELI LAW GROUP LLC, 121 SW Morrison Street, Suite 400, Portland, OR 97204; and Michael E. Haglund and Eric J. Brickenstein, HAGLUND KELLEY LLP, 200 SW Market Street, Suite 1777, Portland, OR 97201. Of Attorneys for Defendant Hoffman Instrumentation Supply, Inc.

Jeff S. Pitzer and Peter M. Grabiel, PITZER LAW, 210 SW Morrison Street, Suite 600, Portland, OR 97204. Of Attorneys for Defendants Mark Romeo, Jeffrey Schwab, Elisha Leveton, John Chadbourne, and Andrew Enseleit.

**Michael H. Simon, District Judge.**

Plaintiff Edwards Vacuum, LLC (Edwards) brings this lawsuit against one of its suppliers and competitors, Hoffman Instrumentation Supply, Inc., doing business as HIS Innovations Group (HIS), and five individual employees of HIS who previously worked for Edwards (the Individual Defendants). Edwards designs integrated vacuum pump systems, mostly for computer (or semiconductor) chip manufacturers. HIS supplies parts to Edwards but recently began competing with Edwards by designing, making, and selling its own integrated vacuum pump systems. In this lawsuit, Edwards alleges misappropriation of trade secrets, breach of contract, tortious interference with economic relations, conversion, breach of the duty of loyalty, and unjust enrichment. HIS denies liability and asserts counterclaims, alleging monopolization, attempted monopolization, and breach of contract.[1] Under 28 U.S.C. § 1404(a), Edwards asks the Court to transfer venue for HIS's counterclaims to the District of Delaware, while keeping Edwards's claims for trial in the District of Oregon.[2] In support of its motion to transfer, Edwards invokes a mandatory forum selection clause contained in the contract alleged by HIS. For the reasons stated below, the Court DENIES Edwards's motion to transfer.[3]

## STANDARDS

On a motion to transfer venue under 28 U.S.C. § 1404(a), a court generally may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of justice." 28

---

[1] The specific contract alleged by HIS in its counterclaims is a different contract than any of the several contracts alleged by Edwards in its claims.

[2] Four days before Edwards filed its motion to transfer venue for HIS's counterclaims, the Court denied Edwards's earlier motion to bifurcate and stay HIS's counterclaims. ECF 215.

[3] Edwards initially requested oral argument, ECF 216, but later withdrew that request. ECF 226 at 1 n.2. Defendants have not requested oral argument, and the Court does not believe that oral argument will be helpful in resolving this matter. *See* LR 7-1(d)(1).

U.S.C. § 1404(a). The ordinary analysis of a motion to transfer under § 1404(a), however, changes when the parties have a contract that includes a valid forum selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). A court must give a valid forum selection clause "controlling weight in all but the most exceptional cases." *Id.* at 63 (internal citation and quotation marks omitted). In addition, in the presence of a valid forum selection clause, the choice of forum made by the party asserting the claim but seeking to avoid the agreed-upon forum "merits no weight." *Id.* at 63. Also, the district court "should not consider arguments about the parties' private interests." *Id*. at 64. Further, the party resisting a forum selection clause bears the burden of showing the exceptional circumstances that make transfer inappropriate. *Id.* at 63. In short, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id*. at 66.

When a court considers a motion to transfer venue involving a valid forum selection clause, it may only consider "public interest" factors, which will rarely defeat a transfer motion. *Id*. at 64. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66; *see also In re TFT-LCD (Flat Panel) Antitrust Litig*., 2014 WL 1477748, at *1 (N.D. Cal. Apr. 14, 2014). As noted by U.S. District Judge James Donato, however:

> This is not to say that a forum selection clause will always be enforced, no matter what. It means that the Court, in weighing a transfer, may consider "public interest factors only" such as the interest of justice, and not arguments about witness convenience or other "private" concerns of the litigants.

*CZ Servs., Inc. v. Express Scripts Holding Co*., 2018 WL 3972030, at *2 (N.D. Cal. Aug. 20, 2018) (quoting *Atl. Marine*, 571 U.S. at 64). Finally, "a forum clause applies only to claims within its scope." *Id.* at *2.

**DISCUSSION**

**A. Scope and Application of Forum Selection Clause**

    **1. HIS's Contract Claim**

    HIS alleges that in the spring of 2019, HIS and Edwards were in active discussions about HIS possibly becoming Edwards's exclusive supplier of certain key components used in Edwards's integrated vacuum pump frame systems. The parties also discussed the potential for HIS to build subsystems or to assemble subsystems into complete systems for Edwards and, in exchange, HIS would agree not to perform similar work for any other seller or brand. By mid-May 2019, HIS had circulated a draft proposal for Edwards's consideration that generally reflected HIS's understanding of these terms. ECF 191, ¶ 37. Shortly thereafter, Edwards's key customer reached out to HIS to request that HIS develop an "agnostic" integrated vacuum pump frame system, capable of being used with vacuum pumps and other equipment made by any approved supplier and not just by Edwards. Soon after receiving that invitation, HIS informed Edwards of HIS's new opportunity. *Id*., ¶ 38.

    Within a few weeks, Edwards and HIS began to discuss the possibility of Edwards acquiring HIS. *Id*., ¶ 45. HIS and Edwards formally began due diligence on June 21, 2019 and agreed to a confidentiality and nondisclosure agreement (NDA) on that date. *Id*., ¶ 46; ECF 77-12 at 9-12. With HIS listed as the "Disclosing Party" and Edwards as the "Recipient," the parties agreed that if HIS disclosed certain confidential information to Edwards about HIS's business, then the "Recipient [Edwards] shall use the Confidential Information solely for the Purpose" of evaluating a possible business transaction between Edwards and HIS. *Id*. This confidential information included Edwards receiving "detailed information regarding HIS's strategic plans to develop an integrated vacuum pump frame system, including HIS's anticipated

cost, margin, head count requirements, labor rates, and capital equipment spending for its new system." *Id.* The parties' NDA also included the following provision:

> This Agreement and all matters relating hereto are governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflict of laws [*sic*] provisions of such State. Each Party irrevocably submits to the exclusive jurisdiction of the federal or state courts of Delaware in any *such* suit, action or proceeding.

ECF 77-12 at 11, ¶ 11 (emphasis added).

HIS alleges that on July 31, 2019, Edwards delivered to HIS a "lowball offer" to purchase HIS, which HIS rejected. ECF 191, ¶ 48. Edwards then "withdrew from the acquisition process." *Id*. HIS also contends that "[p]romptly after withdrawing from the acquisition process, Edwards began a systematic effort to reduce its pricing just enough to target HIS's projected cost savings to [Edwards's primary customer]." *Id.*, ¶ 49. HIS adds, on "information and belief," that Edwards then began "soliciting HIS's suppliers and demanding price concessions to match HIS's confidentially disclosed cost targets" and that "Edwards used HIS's confidential information obtained pursuant to the NDA to make targeted representations to [Edwards's key customer] that [Edwards] could achieve cost savings in order to persuade [that customer] to defer its invitation for HIS to qualify" HIS's competitive integrated vacuum pump frame system. *Id*.

Based on these allegations, HIS maintains that Edwards breached the June 21, 2019 NDA. *Id*., ¶¶ 101-105.[4] The Court concludes that HIS's contract counterclaim falls squarely within the scope of the mandatory and exclusive forum selection clause contained in that NDA. But the story continues.

---

[4] In HIS's counterclaims (ECF 191), HIS sometimes refers to the date of this NDA as June 21, 2019 (*see* ¶ 46) but sometimes refers to its date as June 17, 2019 (*see* ¶ 102). Based on ECF 77-12 at 9-12, which appears to be a copy of the NDA at issue, the Court assumes that the correct date is June 21, 2019.

### 2.  HIS's Antitrust Claims

HIS's other counterclaims alleges monopolization and attempted monopolization, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. HIS identifies "integrated vacuum pump frame systems" as the relevant product market and the entire United States as the relevant geographic market. ECF 191, ¶¶ 3-5. HIS further alleges that the relevant market is highly concentrated, with essentially two manufacturers collectively holding a 95 percent market share. *Id*., ¶ 12. HIS asserts that Edwards holds a 70 percent market share and the second largest competitor (a company other than HIS) holds a 25 percent market share. *Id*., ¶ 18. In addition, HIS contends that the relevant market has "high barriers to entry" and "inelastic demand." *Id*., ¶ 18-20.

HIS also alleges that HIS's potential entry into this market threatens Edwards's monopoly power and that Edwards's unlawfully maintains its monopoly power through exclusionary conduct. According to HIS, Edwards allegedly ties the sales of its integrated vacuum pump frame systems (the alleged tying product) to related products and services (e.g., pumps, abatement systems, and aftermarket services). *Id*., ¶¶ 26-27. HIS also alleges that Edwards

> exacerbated barriers to entry and suppressed competition through a set of anticompetitive tactics that include imposing (or attempting to impose) non-compete covenants on its suppliers, employee intimidation, "no poach" agreements, customer threats, and bad faith litigation. Edwards has deployed a combination of these tactics against HIS, first in an effort to prevent its market entry and, failing that, to burden HIS's ability to gain sales and market share.

*Id*., ¶ 32.

HIS contends that Edwards demanded a non-compete agreement from HIS in exchange for nominal status as a "preferred supplier." *Id*., ¶¶ 36-44. HIS also alleges that Edwards

threatened and retaliated against HIS and its employees for HIS's use of competitive hiring practices (mainly, by bringing this lawsuit). *Id*., ¶¶ 53-69. HIS further maintains that Edwards prosecuted knowingly false trade secret claims (again, through this lawsuit) to raise HIS's costs and chill demand for HIS's competitive frame system. *Id*., ¶¶ 70-84. Finally, and most relevant to the pending motion to transfer venue, HIS contends that after failing to acquire HIS, Edwards exploited HIS's confidential information in breach of the NDA to obstruct HIS's market entry. *Id*., ¶¶ 45-52.[5]

This final contention of exclusionary conduct is most directly related to HIS's contract counterclaim, alleging breach of the June 21, 2019 NDA. Determining whether Edwards "exploited" HIS's "confidential information," as HIS alleges, will likely require interpreting and applying the NDA. Thus, if any part of HIS's antitrust counterclaims would seem to trigger the forum selection clause of the NDA, it would be this allegation. HIS's other allegations of anticompetitive or exclusionary conduct, however, have nothing to do with the NDA and, thus, would not be subject to the forum selection clause in that agreement.

Further, the question of whether HIS's allegations regarding the NDA in its antitrust counterclaims fall within the scope of the forum selection clause is not as simple as it may seem. The first sentence of ¶ 11 in the NDA reads: "This Agreement and all matters relating hereto are governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflict of laws [*sic*] provisions of such State." ECF 77-12 at 11, ¶ 11. The second

---

[5] Edwards recently filed a motion to dismiss HIS's counterclaims for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF 228. That motion has not yet been fully briefed, and nothing in this Opinion and Order in any way reflects the Court's views on that motion, which challenges the legal sufficiency of HIS's counterclaims.

sentence reads: "Each Party irrevocably submits to the exclusive jurisdiction of the federal or state courts of Delaware in *any such suit, action or proceeding*." *Id*.

Including the word "such" in this paragraph creates a rather unusual phrasing for a mandatory and exclusive forum selection clause. A typical forum selection clause might read, for example, "[w]ith respect to *any disputes* arising out of or related to this Agreement, the parties consent to the exclusive jurisdiction of, and venue in" state or federal courts of a particular jurisdiction. *Yei A. Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1085 (9th Cir. 2018) (emphasis added). The parties here, however, agreed that the state or federal courts of Delaware had exclusive jurisdiction only over "*such* suit, action or proceeding." The Court must give meaning to the parties' addition of the word "such." *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect . . . .") (citing *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 2010 WL 779992, *2 (Del. Mar. 8, 2010)). HIS suggests, and the Court agrees, that one way for the Court to give effect to the word "such" is to read the forum selection clause to cover only those "suits, actions or proceedings" that are "governed by," or that require a court to "construe" the agreement "in accordance with, the laws of the State of Delaware." Not only is that interpretation consistent with the text, it also makes sense. The parties understandably would desire that Delaware's federal or state courts adjudicate any dispute involving Delaware law but would have no similar preference when their dispute involved only federal law (for example, antitrust) —a subject over which Delaware's courts have no special or unique expertise.

A federal antitrust claim under § 2 of the Sherman Act is *not* governed by the laws of the State of Delaware. Accordingly, the most reasonable interpretation of ¶ 11 of the NDA yields the conclusion that nothing in HIS's two antitrust counterclaims is subject to the forum selection

clause, including the allegations of anticompetitive conduct relating to the alleged breach of the NDA. But again, the story continues.

## B.  Waiver or Forfeiture of Forum Selection Clause

Regardless of whether HIS's counterclaims fall within the ambit of the NDA's forum selection clause, Edwards's motion to transfer should be denied because Edwards waived or forfeited its right to challenge venue. In its claims, Edwards alleges that, among other things, HIS breached a different nondisclosure agreement with Edwards. ECF 186, ¶¶ 166-172. Indeed, Edwards relied on this allegation, among other things, it its motion for preliminary injunction, which the Court granted in part after finding that HIS likely breached a different agreement with Edwards. ECF 212. One of the agreements that Edwards relied upon in its motion for preliminary injunction was received in evidence as Hearing Ex. 10. That agreement is titled, "One-Way Confidentiality Agreement" (OWCA) and dated March 6, 2015. In this OWCA, Edwards is identified as the "Discloser" and described as a company incorporated in Delaware. Paragraph 10.1 of the OWCA provides:

> This Agreement shall be governed in all respects by the laws of the state and country of incorporation of Discloser and the parties agree to submit themselves to the exclusive jurisdiction of the courts of that state and country.

Hearing Ex. 10.

Notwithstanding the parties' express agreement in the OWCA to the exclusive jurisdiction of the courts in Delaware, where Edwards is incorporated, Edwards brought this lawsuit, and moved for a preliminary injunction, in the District of Oregon, where Edwards maintains a state-of-the-art design and manufacturing facility for integrated vacuum pump systems. Further, Edwards' motion for a preliminary injunction was based in part on Edward's allegation that HIS had breached this specific agreement, the OWCA. The parties have been

actively litigating this case in the District of Oregon since September 29, 2020, based in part on allegations involving the OWCA, which contains a mandatory and exclusive forum selection clause designating Delaware.

In response, Edwards states that both parties have waived or forfeited enforcement of the mandatory and exclusive Delaware forum selection clause contained in the OWCA, but, Edwards adds, Edwards has not waived enforcement of a similar clause contained in a different agreement, the June 21, 2019 NDA, which HIS refers to in its counterclaims. Technically, Edwards is correct that the March 6, 2015 OWCA and the June 21, 2019 NDA are separate agreements, each with their own Delaware forum selection clause. Edwards also is correct that a waiver or forfeiture of a forum selection clause in one agreement does not necessarily waive or forfeit a similar clause in another agreement. But there is more to the forfeiture story.

After HIS filed its three counterclaims (monopolization, attempted monopolization, and breach of contract), Edwards filed a motion asking this Court to bifurcate and stay HIS's counterclaims. ECF 204. In that motion, Edwards said *nothing* about any forum selection clause. Nor did Edwards reserve its rights to invoke that clause later or seek a transfer of venue as an alternative to the motion to bifurcate and stay. (Edwards also filed a motion to admit *pro hac vice* counsel to assist Edwards in defending against HIS's antitrust counterclaims but similarly said nothing in that motion about any forum selection clause. ECF 210.)

The Court promptly considered Edwards's motion to bifurcate and stay and entered a written order denying that motion on May 17, 2021. ECF 215. Only *after* that, on May 21, 2021, did Edwards move to transfer venue, asserting for the first time the existence of a forum selection clause that designated exclusive jurisdiction in Delaware. ECF 216.

Edwards may not have intended to waive its right to enforce the forum selection clause in the NDA referenced in HIS's counterclaims, but Edwards, through its litigation actions, has forfeited that right. As the Seventh Circuit explained:

> [A] right can be waived or forfeited. If the defendant tells the plaintiff that he is content with the venue of the suit, or by words or actions misleads the plaintiff into thinking this or the court into becoming involved in the case so that there would be wasted judicial effort were the case to be dismissed to another forum, or if he stalls in pleading improper venue because he wants to find out which way the wind is blowing, then conventional principles of waiver or equitable estoppel come into play and if invoked by the plaintiff [or counterclaim-plaintiff] block the challenge to venue.

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd*., 364 F.3d 884, 887-88 (7th Cir. 2004); *accord Misch ex rel. Estate of Misch v. Zee Enters., Inc*., 879 F.2d 628, 631-32 (9th Cir. 1989) (waiver is appropriate when party's conduct amounts to a "tacit admission . . . that venue is properly laid there").

Edwards's motion to bifurcate thus shows that Edwards was content to remain in the District of Oregon but simply did not want HIS's counterclaims to be tried along with Edwards's own claims before the same jury. Edwards's motion thus misled both HIS and the Court (or at least just the Court) into thinking that Edwards was fine with the case remaining in the District of Oregon, and it was only an issue of timing and a question of one versus two jury trials. This also was a tacit admission by Edwards that venue is properly laid in this district. The Court then devoted time to resolving Edwards's motion to bifurcate and stay.[6] It was only *after* Edwards

---

[6] If Edwards would have brought its motion to transfer venue first (and thereby avoided any argument of waiver or forfeiture), or even combined a motion to transfer venue with an alternative motion to bifurcate and stay, the Court would have addressed Edwards's motion to transfer before even turning to Edwards's motion to bifurcate and stay. "Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion should unquestionably take top priority." *In re Apple Inc*., 979 F.3d 1332, 1337 (Fed. Cir. 2020*); accord In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) (explaining that

learned "which way the wind was blowing" on the issues of bifurcation and stay that Edwards filed its motion to transfer venue. Under these facts, Edwards has waived or forfeited its right to challenge venue. Nothing in *Atlantic Marine* is to the contrary.

## C. Application of Public Interest Factors

Finally, even if Edwards did not waive or forfeit is right to challenge venue, transfer of HIS's counterclaims is not in the interest of justice. In *Atlantic Marine*, the Supreme Court stated that a court must give a valid forum selection clause "controlling weight in all *but the most exceptional cases*." 571 U.S. at 63 (emphasis added). Thus, a court may not consider convenience to the parties or other private interest factors but may—and, indeed, should—consider public interest factors. *Id.* at 64. And although public interest factors will "rarely defeat a transfer motion," *id.*, "rarely" does not mean never. *See* 15 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3854.1 (4th ed.) ("[T]he existence of a forum selection clause cannot be dispositive on a motion for transfer."); *see also CZ Servs.*, 2018 WL 3972030, at *2 ("This is not to say that a forum selection clause will always be enforced, no matter what."). Thus, even if Edwards had not waived or forfeited its right to challenge venue for HIS's counterclaims, the Court concludes that this lawsuit presents an exceptional case and that consideration of public interest factors warrant the denial of Edwards's motion to transfer HIS's counterclaims.

Without prejudging any later renewed motion that may be filed by Edwards to bifurcate the trial under Rule 42(b) of the Federal Rules of Civil Procedure, it appears to the Court at this time that the issues presented in Edwards's claims and HIS's *antitrust* counterclaims are closely intertwined. Indeed, several of HIS's allegations of exclusionary conduct by Edwards relate

---

transfer motions should take "top priority"). If the Court would have granted Edwards's motion to transfer, there would have been no need to address its motion to bifurcate or stay.

directly to Edwards's claims in this lawsuit.[7] Transferring the entirety of *HIS's antitrust counterclaims* to another district while resolving *Edwards's claims* in this district thus risks the possibility of inconsistent rulings and verdicts. That would undermine public confidence in our legal system, which is a public interest factor that the Court should consider. *See Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 30 (1988) (explaining that the public interest factors include "systemic integrity and fairness"); *see also* 15 Wright & Miller, *Fed. Prac. & Proc. Juris*. § 3854.1 (4th ed.) (stating that the "interest of justice" is a public interest factor).

One possible solution to this problem would be to sever HIS's contract counterclaim under Rule 21 of the Federal Rules of Civil Procedure and transfer only that claim to Delaware while retaining HIS's antitrust counterclaims. That solution, however, also risks inconsistent rulings. One of HIS's antitrust allegations is that Edwards breached its NDA with HIS and wrongfully used HIS's confidential business information in an anticompetitive manner. There is a risk that different courts and different juries might reach different conclusions regarding whether Edwards breached its NDA with HIS.

A second possible solution would be to sever both HIS's contract counterclaim and the *portion* of HIS's antitrust counterclaims that relates to the NDA and transfer only those issues to Delaware. This Court would then retain Edwards's claims and *most* of HIS's counterclaims, excluding only the allegations relating to the NDA, which would be resolved in Delaware. Unfortunately, this solution also risks inconsistent rulings and verdicts. Both this Court and a federal court in Delaware would be called upon to decide certain threshold questions relating to

---

[7] Again, the Court recognizes that Edwards has recently filed a motion to dismiss (ECF 228), which includes an argument invoking the *Noerr-Pennington* Doctrine, among other things. Nothing in this Opinion and Order should be interpreted as expressing any views on the merits of the pending motion to dismiss. *See* n.5, *supra*.

HIS's antitrust counterclaims, such as market definition, market power, and barriers to entry, possibly resulting in inconsistent answers to the same questions. Among other things, this would undermine the "systemic integrity" of our justice system. Further, the notion of splitting an antitrust claim that alleges monopolization (and attempted monopolization) between two district courts and holding two trials with one focusing on one set of alleged exclusionary conduct and the other focusing on a different set of alleged exclusionary conduct not only risks inconsistency, it also would become the posterchild for wasteful duplication of judicial resources.[8]

For all these reasons, the Court concludes that this case presents one of the "exceptional" circumstances allowed under *Atlantic Marine* to avoid a mandatory forum selection clause (even if it were not forfeited by Edwards' litigation conduct here). The public interest factors so demand.

## CONCLUSION

The Court DENIES Edwards's Motion to Transfer Venue. ECF 216.

**IT IS SO ORDERED**.

DATED this 9th day of June, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[8] Still another public interest factor that militates against transfer of venue is "the local interest in having localized controversies decided at home." *Advanced China Healthcare*, 901 F.3d at 1088. As noted, Edwards operates a state-of-the-art design and manufacturing facility in Hillsboro, Oregon, "which was designed in large part around the development of Edwards's SynErgis integrated vacuum pump systems." ECF 186, ¶ 12. And HIS is headquartered in Hillsboro, Oregon. *Id.*, at ¶ 13. Further, many, if not all, of the employees allegedly "poached" by HIS or "threatened" by Edwards, depending upon how a jury views the facts, live in or near Portland, Oregon. *Id.*, ¶¶ 14-20. Although private interests play no role in this transfer analysis, there is a public interest in having a localized controversy decided locally.